**Dated: December 29, 2015**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KRISTI R. BIAS, | ) | Case No. 15-14511-SAH |
| Debtor. | ) | Chapter 7 |

**ORDER DENYING MOTION TO EXCUSE DEBTOR FROM MEETING OF CREDITORS AND NOTICE OF OPPORTUNITY FOR HEARING [DOC. 9]**

Before the Court is the Motion to Excuse Debtor from Meeting of Creditors and Notice of Opportunity for Hearing [Doc. 9] (the "Motion") filed by debtor Kristi R. Bias ("Debtor") on November 30, 2015. In the Motion, Debtor explains that she is an inmate sentenced to a term of incarceration in a federal prison; therefore, she cannot personally attend her 11 U.S.C. § 341 ("Section 341") meeting of creditors (the "Meeting of Creditors"). As an alternative, Debtor proposes that she participate via interrogatories.

Section 341 prescribes that, upon the entry of an order for relief, the United States Trustee is required to convene and preside over a meeting of the creditors in the case. The Rules specify that the meeting must be held not less than 21 and not more than 40 days after the order for relief

is entered. Fed. R. Bankr. P. 2003(a). This Court cannot enlarge or reduce such time constraints. Fed. R. Bankr. P. 9006(b)(3) and (c)(2).

The Bankruptcy Code imposes very few burdens upon a chapter 7 debtor in exchange for the tremendous benefit of the discharge. One of those responsibilities, and it is a critical one, is that a debtor "shall appear and submit to examination under oath at the meeting of creditors under section 341(a)" of the Bankruptcy Code. 11 U.S.C. § 343. The point of the Meeting of Creditors:

> is to give not only the trustee, but the creditors, the opportunity to appear and examine the debtor concerning the debtor's assets, liabilities and financial affairs. 11 U.S.C. § 343. Such an examination may provide information leading to the recovery of assets for the estate, or potential grounds to challenge the discharge of the debtor, or other information pertinent to the administration of the debtor's estate. Conversely, the debtor's examination may alleviate concerns that creditors may have about the debtor's entitlement to the benefits of a discharge. Either way, the debtor's attendance at the 341 meeting serves to promote the administration of a bankruptcy case and helps to minimize public concerns about the bankruptcy process.

In re Ladner, 156 B.R. 664, 665 (Bankr. D. Colo. 1993).

The plain language of Section 343 is unequivocal and mandatory—"the Debtor shall appear . . . ." 11 U.S.C. § 343. This Court should obey the clear language of the legislative enactment. United States v. Ron Pair Enter., Inc., 489 U.S. 235 (1989); In re Hart, 923 F.2d 1410 (10th Cir.1991); In re Ginco, 105 B.R. 620 (D. Colo. 1988). This is true for the requirements of section 343 as well. In re Martin, 12 B.R. 319 (Bankr. S.D. Ala. 1981); In re Rust, 1 B.R. 656 (Bankr. M.D. Tenn. 1979). In the past, this Court has rigidly interpreted Section 343 to require

debtors to appear at their Section 341 meetings.  See, e.g. In re Agan, 285 B.R. 324 (Bankr. W.D. Okla. 2002).

In recent years, this Court, like many others, see, e.g. In re Vilt, 56 B.R. 723 (Bankr. N.D. Ill. 1986); In re Stewart, 14 B.R. 959 (Bankr. N.D. Ohio 1981), has recognized the mandatory language in Section 341, while acknowledging that physical limitations, such as a medical condition or overseas military deployment, may make personal appearance impossible.  Quite often, the Court has allowed trustee to serve interrogatories and has found that an infirm or deployed debtor's sworn responses may serve as a valid substitute.

The Court's understanding has invited an ever-expanding universe of debtors with excuses to come forward requesting that their personal appearance requirement be waived. Amongst that universe is an increasing number of inmates confined to federal and state prisons. It is this Court's belief that inmates are not akin to individuals with disabilities and should, likewise, never be analogized to deployed servicemembers

Other courts have recognized the elementary differences between inmates and disabled people within the context of considering whether an inmate is legally "disabled" such that he need not complete his financial management course as a prerequisite to obtaining his discharge. In In re Denger, 417 B.R. 485 (Bankr. N.D. Ohio 2009), the court surveyed such precedents:

> In general terms, "disability" can be construed quite broadly. Black's Law Dictionary, for example, defines "disability" as the "want of legal capability to perform an act." Black's Law Dictionary 461 (6th ed. 1990). However, as applied to § 109(h)(4), Congress created a narrow definition with a waiver of the financial management course on the basis of a "disability" requiring that the debtor be "so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing . . . " Based on the narrowness of this definition, courts have

> generally rejected overtures by debtors to equate their incarceration with a "disability" under §109(h)(4).
>
> In In re Anderson, 397 B.R. 363 (6th Cir. BAP 2008), the debtor argued that his incarceration at a correctional facility was equivalent of a disability because he was physically restricted from performing his duties. On this issue, the Court in In re Anderson rejected the debtor's interpretation, upholding the bankruptcy court's determination that a person's incarceration does not, alone, qualify as a "disability" under § 109(h)(4). Quoting from another court's decision, the Court in In re Anderson opined that "although the Court is sympathetic to debtor's situation, his incarceration is not within the meaning of disability intended by Congress when they drafted section 109, and therefore the debtor does not meet the exception for permanent waiver to § 109(h)(4)," quoting In re Stark, 341 B.R. 830, 831 (Bankr. E.D. Virginia 2006).
>
> In straightforward terms, a debtor's incarceration, standing on its own, cannot be equated with a disability. Section 109's narrow definition of disability in this regard specifically requires a physical impairment, the concept of which implies a condition inherent to a person, not one which is imposed by external conditions the alleviation of which would relieve the disability. Consequently, while incarceration may erect physical barriers to a debtor seeking to complete the financial management course, a person's incarceration, being a condition imposed by the state, cannot be equated with a physical impairment because it is not an injury, defect, or characteristic of the debtor's physical makeup that prevents him from doing what is necessary to complete the financial management course.

Id.; see also In re Hubel, 395 B.R. 823 (N.D. N.Y. 2008); In re Anderson, 397 B.R. 363 (6th Cir. BAP 2008); Bristol v. Ackerman (In re Bristol), 2009 WL 238002 (E.D. N.Y. Feb. 2, 2009) (unpub.); In re Alexander, 432 B.R. 41 (Bankr.N.D.N.Y.2010); In re Larsen, 399 B.R. 634, 638 (Bankr. D. Wisc. 2009); In re Rendler, 368 B.R. 1 (Bankr. D. Minn. 2007); In re Gordon, 467 B.R. 639 (Bankr. W.D. Ky. 2012); In re McBride, 354 B.R. 95 (Bankr. D. S.C. 2006); In re Patasnik, 425 B.R. 916 (Bankr. S.D. Fla. 2010); In re Solomon, 436 B.R. 451 (Bankr. W.D.

Mich. 2010) (disallowing inmate's request for permanent exemption under 11 U.S.C. § 109(h)(4)).

Inmates, likewise, differ from servicemembers.  Whereas servicemembers on deployment are excused from attending the Section 341 meeting in this district because the Court presumes they are providing a valuable service to this nation which cannot be interrupted without potentially harmful effects, inmates have no such excuse.  In point of fact, inmates find it hard to participate in a Section 341 meeting precisely because they are being punished for harms they have already visited upon society.  As a purely legal matter, Congress has recognized the value that servicemembers deliver and has determined, as a matter of public policy, that they should not be burdened by litigation demands while deployed.  See, e.g. Servicemembers Civil Relief Act, 50 U.S.C.A. §§ 501 - 597b.  In contrast, not only does our federal system decline to exempt inmates from fulfilling legal obligations, it generally places the burden upon the states' prison systems to facilitate inmates' practically unfettered access to the courts.  See, e.g. Bounds v. Smith, 430 U.S. 817 (1977) (holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.").  Certainly, if prison authorities must give inmates access to legal materials free of charge in order to help inmates sue those very same authorities, they might also let an inmate telephonically appear for a validly-noticed court proceeding.

The Court is uncertain whether Federal Bureau of Prisons' policy takes a position on an inmate's telephonic participation in a Section 341 meeting, in large part, because the Motion is silent on this topic.  Recently, this Court was confronted with the same issue involving a state

inmate who wished to be excused from her Section 341 meeting and to answer interrogatories *in lieu* of her attendance.  See In re Neider, Case No. 15-10681-JDL.  Therein, the Court determined that it should consider such a request using the "three-part exceptional circumstances test"[1] to determine when a debtor may be validly excused from personally appearing at his Section 341 meeting.  Under this test, a debtor need not personally appear when:  (1) the debtor cannot personally appear at the meeting of creditors at the place where the meetings are regularly conducted, because of serious health reasons or other reasons beyond the debtor's control; (2) the inability of the debtor to personally appear is not a temporary impairment; and (3) the debtor has demonstrated a present and substantial need for bankruptcy relief, alternate arrangements for a place of conducting the meeting where the debtor can attend have been made, or telephonic examinations of a debtor have been permitted.  Memorandum Opinion and Order Regarding Motion to Excuse Appearance by Debtor at Section 341 Meeting of Creditors [Doc. 37], at 6, filed on June 9, 2015, in In re Neider, Case No. 15-10681-JDL (citing In re Sochia, 231 B.R. 158 (Bankr. W.D. N.Y. 1999)).

Applying the test to the Motion, the Court finds that the Motion shows that the first and second elements are met.  As to the third element, the Motion is silent.  Accordingly, the Motion is DENIED without prejudice to Debtor's right to move for leave to participate telephonically in her Meeting of Creditors or to show the Court why Federal Bureau of Prisons' policy prohibits telephonic participation in validly-noticed court proceedings.

---

[1] In her Memorandum Opinion and Order Regarding Motion to Excuse Appearance by Debtor at Section 341 Meeting of Creditors [Doc. 37], at 6, filed on June 9, 2015 in In re Neider, Case No. 15-10681-JDL, Judge Loyd explained the reasoning behind her decision to adopt the three-part exceptional circumstances test.  This Court agrees with Judge Loyd's reasoning and hereby adopts it by reference.

IT IS SO ORDERED.

# # #